Alisa Lipski (SBN 278710)
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C.
1221 McKinney, Suite 3460
Houston, Texas 77010
Tel: 713-655-1101
Fax: 713-655-0062
Email: alipski@azalaw.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXUS DISPLAY TECHNOLOGIES, LLC, | Case No.  2:15-cv-02400-JVS (DFMx) |
| Plaintiff, | HONORABLE JAMES V. SELNA |
| v. | JOINT RULE 26(f) REPORT |
| ACER INC. and ACER AMERICA CORPORATION, | |
| Defendants. | |

Plaintiff Nexus Display Technologies, LLC ("NDT" or "Plaintiff") and Defendants Acer Inc. and Acer America Corporation ("Acer" or "Defendants") by and through their respective counsel, submit the following Joint Rule 26(f) Report pursuant to the Court's June 5, 2015 Order requiring a Joint Rule 26(f) Report.

**A.    SYNOPSIS**

On April 1, 2015, Plaintiff filed patent infringement lawsuits against Acer and ASUS. U.S. Patent Nos. 7,295,578; 7,599,439; 5,835,498; and 7,143,328 ("the

1

Patents-in-Suit") are at issue. [1]  As the Court knows, currently pending before it are cases involving the same patents against LG and ViewSonic.  All Defendants have been notified that NDT is not accusing any Intel products of infringing the transmitter claims of any of the patents-in-suit, specifically NDT is not accusing any Intel product of infringing Claims 1 – 38 and 49 of the '439, Claims 1 – 13 of the '498, Claims 11 – 18 of the '328 or Claims 8-10 of the '578.

The Patents-in-Suit are directed generally to video transmission technology. Plaintiff alleges that through the use of the inventions claimed in the asserted patents, consumer electronic devices can deliver video images with higher resolutions, faster refresh rates, and a deeper palette of colors to the user, satisfying the growing demand for high-definition products like 4K televisions, wide-screen monitors, and 3D displays. Plaintiff alleges that a wide array of consumer electronics devices, including, for example, certain Defendants' notebook and desktop computers, tablets, televisions, monitors, and display projectors, infringes the Patents-in-Suit.

The asserted patent claims are directed toward technology implemented by the data transmitters and the data receivers, as well as methods and systems featuring both data transmitters and data receivers. For example, Plaintiff contends that the patented technology is found in Defendants' products that transmit data, such as notebook and desktop computers, and the patented technology is also found in Defendants' products that receive data, such as computer monitors and televisions. Plaintiff's patents asserted against the various defendants are as follows[2]:

The cases in the Eastern District of Texas are proceeding against Dell and Lenovo.  Settlements have been reached with Panasonic, Eizo and NEC.

---

[1] On July 11, 2014, Plaintiff filed five patent infringement actions in the Eastern District of Texas against Dell Inc., Lenovo (USA) Inc., Panasonic Corp. of North America, Eizo Corporation, and NEC Corporation, asserting the Patents-in-Suit also.  A claim construction hearing was held in that case on June 22, 2015, but a Claim Construction Order has not yet issued.

[2] NDT notes that it is currently finalizing a settlement with BenQ.

**B.    LEGAL ISSUES**

**1. Plaintiff's Statement**

The principal disputed legal issues are:

a) The proper claim construction for the asserted claims of the Patents-in-Suit;

b) Whether Defendants infringe and continue to infringe – literally or under the doctrine of equivalents– one or more of the asserted claims of each of the Patents-in-Suit;

c) The amount of compensation NDT is entitled to for any proven patent infringement, pursuant to 35 U.S.C. § 284, and if so, the amount, including whether or not the amount should be trebled due to willfulness;

d) Whether NDT is entitled to a permanent injunction pursuant to 35 U.S.C. § 283;

e) Whether the case is "exceptional" within the meaning of 35 U.S.C. § 285, entitling any party to its reasonable attorneys' fees.

f) The above list is not intended to be exhaustive, and Plaintiff reserves the right to seek discovery regarding additional subjects as the case progresses.

**2. Defendant's Statement**

Defendants anticipate that at least the following will be key legal issues:

a) The proper construction of the claims of the Patents-In-Suit.

b) Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

c) Whether each of the Defendants has directly infringed the asserted claims of the Patents-in-Suit as properly construed either literally or under the doctrine of equivalents.

d) The extent to which Plaintiff or its predecessor-in-interest has licensed

3

1      or exhausted its right to assert the Patents-in-Suit, including but not
2      limited to by licensing Intel Corporation.
3      e)   Whether Plaintiff's claims are barred in whole or in part under the
4           doctrine of waiver, laches, or equitable estoppel in view of Silicon
5           Image's conduct.
6      f)   What relief, if any, Plaintiff may be entitled to if any asserted claims of
7           the Patents-in-Suit is found to be valid and infringed by any of the
8           Defendants.
9      g)   Whether Plaintiff's claims for damages if limited under 35 U.S.C. §
10          287 for failure to mark.
11     h)   Whether this case is "exceptional" within the meaning of 35 U.S.C. §
12          285, entitling Defendants to their reasonable attorneys' fees.
13     The above list is not intended to be exhaustive, and Defendants reserve the
14 right to seek discovery regarding additional subjects as the case progresses.
15 Furthermore, Defendants do not agree that willful infringement or injunctive relief
16 should be part of this case.  Defendants were not provided with any notice of the
17 asserted patents before the complaint was filed.  Furthermore, because the Patents-
18 In-Suit are being asserted by a Non-Practicing Entity, and in view of Silicon
19 Image's participating in VESA, injunctive relief should also not be at issue.

20 **C.    DAMAGES**

21     **1. Plaintiff's Statement**

22     Plaintiff is entitled to no less than a reasonable royalty for the use of the
23 Patents-in-Suit. The damages Plaintiff seeks in this action are based on the
24 Defendants' sales of the accused electronics devices, including, for example, the
25 Defendants' notebook and desktop computers, tablets, televisions, monitors, and
26 display projectors. Those devices will be identified specifically, to the best of
27 Plaintiff's ability, using public information in Plaintiff's infringement contentions in
28 accordance with the schedule below. As Plaintiff does not yet have sales information

from the Defendants regarding those accused electronics devices, Plaintiff is not yet able to determine the full extent of its damages. Based on the market information that Plaintiff does have, however, it estimates its damages to be in the eight figure range.

### 2. Defendants' Statement

Defendants dispute that Plaintiff is entitled to any damages as a result of Defendants' sale of the accused products.  Plaintiff has not articulated any theory or computation of damages, or identified any evidence that is allegedly being harmed in the marketplace.

### D.     INSURANCE

The parties have not identified any insurance agreement which would pertain to any claims in this case.

### E.     MOTIONS

At this time, the Parties do not intend to file any motions seeking to transfer venue.

Further, Plaintiff does not intend to file any motions seeking to (a) add other parties or claims, or (b) file amended pleadings.

The parties reserve their rights to file motions to add other parties or claims or to file amended pleadings based upon information that may be learned in discovery.

### F.     DISCOVERY AND EXPERTS

The parties began their Rule 26(f) Conference on August 7, 2015.

### 1.     Rule 26(a) Initial Disclosures

The parties have agreed to serve their initial disclosures on September 29, 2015, so that Defendants have time to adequately identify the suppliers of components for the accused products. The parties do not propose to modify or change the form or requirement for disclosures under Fed. R. Civ. P. 26(a).

**2.      Subjects, Phases or Other Limitations of Discovery**

**a.      Plaintiff's Statement**

Plaintiff does not believe that discovery should be phased or otherwise restricted in a manner that improperly burdens the ability of the parties to prepare this case for trial.

Plaintiff proposes the following with respect to email discovery: at a reasonable time following the Rule 26(f) conference, the parties shall exchange a list of the 12 most-significant email custodians based on the facts of the case. From that list, the parties shall select up to 8 custodians to serve email discovery requests upon. In addition, the email discovery requests shall contain no more than 10 search terms to narrow the amount of email discovery produced. Plaintiff believes that the proposed narrow email discovery is particularly relevant to damages, given that email communications may discuss the importance and value of the inventive features of the patent.   Further, Plaintiff believes that email communications likely reveal important information related to how Defendants' approach entering into license agreements, which is significant for building a damages model using the factors set out in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).

Plaintiff believes that the above proposal is appropriate and fairly addresses any concern regarding the cost of discovery. Additionally, the approach is similar to the email production protocols used by courts in Delaware, Texas, and in California. For example, the District of Delaware's Electronically Stored Information (ESI) Order would allow for email requests to be served on 10 custodians and controls the amount of production by limiting the requests to ten search terms. As another example, the ESI Order for the Eastern District of Texas would calls for the

1  identification of 15 custodians and allows the parties to serve email discovery

2  requests on 8 custodians. In fact, for the related cases currently pending in the Eastern

3  District of Texas, the parties have agreed on a compromise position that calls for the

4  identification of 12 custodians and allows the parties to serve email discovery

5  requests on 8 custodians. It is this compromise position that Plaintiff respectfully asks

6  the Court to impose in this case.

7

8                    **b.**     **Defendants' Statement**

9          Plaintiff's proposed approach for handling email discovery fails to account

10  for the reality that, in patent cases, "the production burden of expansive e-requests"

11  normally "outweighs their benefits" and instead turns discovery into "a tactical

12  weapon." Hon. Randall R. Rader, Former Chief Judge of the Court of Appeals for

13  the Federal Circuit, The State of Patent Litigation (Mar. 28, 2012) (transcript

14  available at

15  http://apps.americanbar.org/intelprop/spring2012/coursematerials/docs/E-

16  Discovery_in_Patent_Litigation/TheState_of_PatentLitigation-

17  ChiefJudgeRader.pdf). As Judge Rader warned, email searches rarely lead to

18  relevant evidence:

19                  I saw one analysis that concluded that *.0074% of the*
                    *documents produced actually made their way onto the trial*
20                  *exhibit list*—less than one document in ten thousand. And
                    *for all the thousands of appeals I've evaluated, email*
21                  *appears even more rarely as relevant evidence.*

22                  Id. (emphasis added).

23  Given these concerns and the limited benefits of email discovery, any approach to

24  email discovery should follow Judge Rader's model in:

25      •   requiring that general production requests exclude emails, with any email

26          discovery to be "phased to occur" later in the discovery process;

27

28

1        • limiting "email production requests to a total of five custodians per

2            producing party," with "five search terms per custodian per party" and a

3            prohibition on "indiscriminate terms" such as product names; and

4        • providing for cost shifting in the event of "disproportionate ESI production

5            requests."

6  Such an approach makes particular sense here for at least two reasons.  First,

7  although Nexus has not yet served infringement contentions, Defendants

8  understand that Nexus' infringement theory will likely center on "DisplayPort"

9  technology, which Defendants source from third-party suppliers and about which

10  Defendants will have limited information relevant to infringement.  Second, the

11  Complaint does not reflect any allegations that suggest that Defendants' subjective

12  pre-filing knowledge regarding any relevant facts, as opposed to the underlying

13  facts themselves, is likely to be at issue.

14        Plaintiff's proposed approach (i.e., handling email at the same time as other

15  discovery and requiring a large number of custodians and search terms) would be

16  inefficient and unbalanced. While dismissing Defendants' concern about the

17  potential for discovery to turn into a weapon (a problem that Judge Rader himself

18  stressed), Plaintiff proposes that the Defendants be required to disclose twelve (12)

19  likely custodians of e-mails when the accused technology was not even developed

20  or manufactured by Defendants. The unbalance between the ESI documents in the

21  respective parties' possession suggests that Nexus' requests for email discovery are

22  calculated to increase the burden on Defendants associated with ESI discovery.

23        Further, Plaintiff has not articulated any genuine reason why email discovery

24  is reasonably likely to provide noncumulative information relevant to any disputed

25  issue.  Plaintiff speculates "that the proposed narrow email discovery is particularly

26  relevant to damages, given that email communications may discuss the importance

27  and value of the inventive features of the patent," but the proposed discovery would

28  not be narrow, and it is difficult to evaluate Plaintiff's claim that the "inventive

features" – much less their purported importance and value – would be discussed, at least until Plaintiff has identified those purported features.  Plaintiff further speculates "that email communications likely reveal important information related to how Defendants' approach entering into license agreements, which is significant for building a damages model using the factors set out in *Georgia-Pacific*," but even assuming that there are search terms that would reveal such information where conventional discovery tools would not, many or all such communications would be protected from discovery by attorney-client privilege or the attorney work product doctrine.

Defendants respectfully submit that the expensive email discovery should be prudently managed, and accordingly, that any keyword searching of email be deferred until and unless a particularized need is articulated.

### 3.    Discovery Conducted to Date

NDT will serve non-confidential information including file histories and the claim construction briefing in Texas prior to the Case Management Conference.

### 4.    Proposed Changes to Limitations on Discovery

In light of the common issues involved in the cases and the desire to conserve both sides' time and resources, the parties agree on the following discovery limitations, subject to the right of any party to request further discovery based on a showing of good cause.

#### a.    Interrogatories

Plaintiff may serve up to 20 common interrogatories to all Defendants and 10 party-specific interrogatories stated individually to each defendant or, where applicable, Defendant Group. Defendants may serve 20 common interrogatories to Plaintiff and each individual defendant or, where applicable, Defendant Group may serve up to 10 additional interrogatories on Plaintiff.

9

1

2

### b.    Non-Expert Depositions

3

Plaintiff is allowed 7 party depositions for each Defendant or, where applicable, Defendant Group. Included in those 7 depositions shall be one Rule 30(b)(6) deposition on technical topics and one Rule 30(b)(6) deposition on damages and other non-technical topics. Each Rule 30(b)(6) deposition shall count for 1 of the allotted 7 depositions regardless of the number of individuals designated by the Defendant or, where applicable, Defendant Group. The Rule 30(b)(6) deposition on technical topics shall not exceed 14 total hours. The Rule 30(b)(6) deposition on damages and other non-technical topics shall not exceed 7 total hours.

Plaintiff is allowed no more than 125 total hours of non-party depositions.

Plaintiff and Defendants may collectively take the depositions of the inventors named on the face of the Asserted Patents. The parties will make reasonable efforts to coordinate schedules such that inventors will only need to be deposed once for the cases brought in California. Defendants' deposition time of a named inventor shall not exceed 10 total hours. In the event only one Defendant Group remains in the case at the time of an inventor deposition, the 10 total hours shall be reduced as follows: if three Defendant Groups remain, this number shall be reduced to 9 total hours; if two Defendant Groups remain, this number shall be reduced to 8 total hours; and if only on Defendant Group remains, this number shall be reduced to 7 total hours. Plaintiff's deposition time of a named inventor shall not exceed 7 hours. No witness shall be subject to more than one deposition in his or her personal capacity.

Defendants may collectively take one Rule 30(b)(6) deposition of the Plaintiff on technical topics, not to exceed 14 hours, and one Rule 30(b)(6) deposition on damages and other non-technical topics, not to exceed 7 hours.  In addition, each Defendant or, where applicable, Defendant Group may take up to 2 additional hours for topics specific to that Defendant or Defendant Group. In addition to the Rule 30(b)(6) depositions, the Defendants may collectively take a total of four party

10

depositions of Plaintiff.

The Defendants may also collectively take an additional 125 hours of non-party depositions, not counting the above-discussed depositions of the inventors of the asserted patents.

### c.    Expert Depositions

Each Side may depose each non-infringement expert or infringement expert for up to 7 hours. For each Defendant or, where applicable, Defendant Group, Plaintiff may depose each non-infringement expert for up to 2 additional hours on topics specific to that Defendant or Defendant Group's products. However, to the extent that a given non-infringement expert is testifying solely on behalf of a single Defendant or Defendant Group, Plaintiff shall be limited to 7 hours. Each Defendant or, where applicable, Defendant Group may similarly depose each infringement expert for up to 2 additional hours on topics specific to that Defendant or Defendant Group's products.

Each Side may depose each invalidity or validity expert for up to 7 hours. For purposes of clarity, if a party uses the same technical expert for both infringement/non-infringement and invalidity/validity issues, this expert will count as separate experts for purposes of depositions.

Each Side may depose each damages expert testifying against it for up to 7 hours. For each Defendant or, where applicable, Defendant Group, Plaintiff may depose each damages expert testifying against it for up to 2 additional hours on topics specific to that Defendant or Defendant Group's products. However, to the extent that a given damages expert is testifying solely on behalf of a single Defendant or Defendant Group, Plaintiff shall be limited to 7 hours. Each Defendant or, where applicable, Defendant Group may similarly depose each damages expert testifying against it for up to 2 additional hours on topics specific to that Defendant or Defendant Group's products.

In the event only one Defendant or, where applicable, Defendant Group remains in the case at the time of an expert deposition, each of the Plaintiff and the Defendant or, where applicable, Defendant Group may depose each expert for up to 7 hours, as is typical in cases involving a single plaintiff and single defendant.

### e.  Notification of Related Actions

In addition to the actions against LGE and ViewSonic, the parties hereby notify the Court that a related set of actions is currently pending in the District Court for the Eastern District of Texas, Judge Gilstrap presiding, involving two additional parties. In the event that parties are dismissed from both sets of actions, leaving only a small number of defendants in each district, the parties respectfully reserve the ability to approach the Court to seek modification of this order to promote an efficient handling of discovery as it pertains to third parties. For example, if only one defendant remains in each district at the time of an inventor deposition, it may make sense at that time to explore a consolidated deposition of the named inventor.

### 5.  Any Discovery Orders

The parties agree that a Protective Order is necessary in these cases to safeguard sensitive, confidential and proprietary information. The parties intend to submit a proposed Protective Order for the Court's approval.

### 6.  Number of Depositions Each Side Will Conduct

The number of anticipated depositions for each side is outlined in the parties' agreed discovery plan (as set forth above in Section 4). With respect to Plaintiff's allowance of 125 hours per Defendant or, where applicable, Defendant Group, Plaintiff is unable to predict the *number* of third-party depositions that it will need for the pending cases, but Plaintiff is agreeable to limiting the *amount* of third-party deposition time as outlined above.

### 7.     Rule 26(a)(2) Expert Witness Disclosures

The timing for expert witness disclosures is set forth in the proposed case schedule below.

## G.     DISPOSITIVE MOTIONS

Plaintiff anticipates that it may file a motion for summary judgment of infringement and validity.

## H.     SETTLEMENT AND SETTLEMENT MECHANISM

Meaningful settlement discussions have not yet taken place.

The parties choose the following settlement mechanism pursuant to Local Rule 16 – 15.4: ADR PROCEDURE NO. 3 - The parties shall participate in a private dispute resolution proceeding.

## I.     TRIAL ESTIMATE

The parties estimate that each trial would be eight (8) court days per case.

Plaintiff submits that discovery, claim construction, and other pretrial matters can and should be consolidated. As for whether the Court should consolidate the cases for trial will ultimately depend upon factors developed throughout the course of the litigation. As such, Plaintiff respectfully reserves the right to address this issue, if necessary and warranted, at a later date.

The parties have demanded jury trials for all issues triable by a jury. The parties do not yet know how many witnesses they will call at trial.

## J.     TIMETABLE

The parties have completed Exhibit A as required by the Court's Order. In addition, the parties have provided an additional proposed schedule based on the

default deadlines of the Northern District of California Local Patent Rules in Section N, below.

### K.   OTHER ISSUES

#### 1.   Plaintiff's Statement

Plaintiff submits that as this is a patent case, there are technical issues involved. However, Plaintiff believes that they are not unduly complicated. Further, once a claim construction order has issued from the Texas court, the parties will likely be able to narrow the disputes between them even further.

## L.   CONFLICTS

The parent company of Nexus Display Technologies LLC is Acacia Research Group LLC, and the parent company of Acacia Research Group LLC is Acacia Research Corporation, a public company.

## M.   PATENT CASES

The parties propose the following dates and methodology for claim construction and Claim Construction Hearings, in accordance with the Patent Rules of the Northern District of California, with the exception that, as ordered, the parties plan to file concurrent opening briefs and concurrent reply briefs.

Finally, the parties note that they may request the Court's leave to identify more than 10 terms that are likely to be most significant under Patent L.R. 4-1(b) in view of the four Patents-in-Suit and depending on the parties' infringement and invalidity contentions.

| EVENT | PARTIES' REQUESTED DATES (based on NDCA patent local rules) |
|---|---|
| Plaintiff to serve "Disclosure of Asserted Claims and Infringement Contentions" | 9/8/15 |
| Defendant to serve "Invalidity Contentions" | 10/30/15 |
| Exchange of Proposed Terms for Construction | 11/13/15 |
| Deadline for Meet and Confer regarding terms to be Construed | 11/20/15 |
| Exchange of Preliminary Claim Construction and Extrinsic Evidence | 12/4/15 |
| Deadline for Meet and Confer regarding issues relating to Claim Construction | 12/11/15 |
| Joint Claim Construction and Prehearing Statement | 1/08/16 |
| Completion of Claim Construction Discovery | 1/22/16 |
| Technical Tutorial | 2/6/16 |
| Concurrent Opening Claim Construction Briefs | 2/11/16 |
| Concurrent Reply Claim Construction Briefs | 2/25/16 |
| Claim Construction Hearing | 3/21/16 |

## O.    MAGISTRATES

The parties do not consent to assignment to a Magistrate Judge for all purposes.

15

1

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI, & MENSING P.C.**

2

3   Dated: August 17, 2015   */s/ Alisa A. Lipski*

4                              Alisa A. Lipski, Attorney for Plaintiff

5

6   **TECHKNOWLEDGE LAW GROUP LLP**

7   Dated: August 17, 2015   /s/ Michael C. Ting

8                              Michael C. Ting, Attorney for Defendants Acer Inc. and Acer America Corporation

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

| Matter | Time | Weeks Before Trial | Plaintiff's Request | Defendant's Request | Court Order |
|---|---|---|---|---|---|
| Trial Date (jury) (court) Estimated Length:_____days | 8:30 a.m. (Tuesdays) | | February 7, 2017 | May 9, 2017 | |
| [Court trial:] File Findings of Fact and Conclusions of Law and Summaries of Direct Testimony | | -1 | January 31, 2017 | May 2, 2017 | |
| Final Pretrial Conference: Hearing on Motions in Limine; File Agreed Upon Set of Jury Instructions and Verdict Forms and Joint Statement re Disputed Instructions and Verdict Forms; File Proposed Voir Dire Q's and Agreed-to Statement of Case | 11:00 a.m. (Mondays) | -2 | January, 23, 2017 | April 24, 2017 | |
| Lodge Pretrial Conf. Order; File Memo of Contentions of Fact and Law; Exhibit List; Witness List; Status Report re Settlement | | -3 | January 17, 2017 | April 17, 2017 | |
| Last day for hand-serving Motions in Limine | | -6 | December 27, 2016 | March 27, 2017 | |
| Last day for hearing motions | 1:30 p.m. (Mondays) | -7 | December, 20, 2016 | March 20, 2017 | |

17

| Matter | Time | Weeks Before Trial | Plaintiff's Request | Defendant's Request | Court Order |
|---|---|---|---|---|---|
| Last day for hand-serving motions and filing (other than Motions in Limine). Please note extended notice requirements for motions for summary judgment under F.R. Civ. P. 56(c). | | -11 | November 22, 2016 | February 20, 2017 | |
| Non-expert cut-off | | -15 | October 25, 2016 | January 23, 2017 | |

## ADDITIONAL MATTERS TO BE DETERMINED
## AT SCHEDULING CONFERENCE

L.R. 16 – 14 Settlement Choice: (1) CT/USMJ (2) Court Mediation Panel (3) Private ADR

| Expert discovery cut-off | | | 30 days after service of Rebuttal Expert Witness Reports | |
|---|---|---|---|---|
| Rebuttal Expert Witness Disclosure | | | 105 days after service by Court of its Claim Construction Ruling | |
| Opposition Expert Witness Report | | | 90 days after service by Court of its Claim Construction Ruling | |
| Opening Expert Witness Disclosure [See F.R. Civ. P. 26(a)(2)] | | | 60 days after service by Court of its Claim Construction Ruling[3] | |

[3] The CAND PLR 3-7 deadline for Defendants to product information regarding reliance on

| | | | | | |
|---|---|---|---|---|---|
| Last Day to conduct Settlement Conference | | | | | |
| Last Day to Amend Pleadings or Add Parties Without Leave of Court | | | | | |

advice of counsel is 50 days after the Claim Construction Ruling.  Plaintiff cannot practicably serve an expert witness disclosure on issues including damages and indirect infringement without certainty regarding reliance on advice of counsel.  Accordingly, the Parties propose extending the initial expert witness disclosure deadline by 15 days.

19